**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GALEN PATON, individually, et al.,

      Plaintiffs,

    vs.                           No. CIV 97-1360 JC/DJS

NEW MEXICO HIGHLANDS UNIVERSITY, et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Defendants' Motion for Partial Summary Judgment ("Motion"), filed August 25, 1999 *(Doc. 48)*. The Court has reviewed the motion, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Defendants' Motion for Partial Summary Judgment in well taken in part, and will be granted in part.

## I.    Background

Unless otherwise noted, the facts below are undisputed or based on Plaintiffs' account. This suit was filed on behalf of two groups of plaintiffs. One group consists of four female New Mexico Highlands University ("NMHU") student athletes ("Student Plaintiffs") who bring their claims individually and on behalf of all others similarly situated.[1] The Student Plaintiffs claim that Defendants intentionally discriminated against them based on sex in the administration of its athletic program. They allege that NMHU allocates a greater percentage of out-of-state athletic scholarships to its men's teams, thereby denying its female athletes equitable access to scholarship funds. The

---

[1] *See* Mem. Op. and Order, filed Oct. 18, 1999 *(Doc. 66)*, conditionally granting Pls.' Mot. for Class Certification.

Student Plaintiffs also claim that NMHU discriminates in the treatment and benefits it provides to female athletes in many other areas.[2] Based on these allegations, the student plaintiffs assert four claims: I) unequal scholarship funding in violation of Title IX, II) unequal treatment and benefits in violation of Title IX, III) violation of equal protection rights under the Fourteenth Amendment to the United States Constitution via 42 U.S.C. § 1983, and IV) violation of Article II, § 18 of the New Mexico Constitution (New Mexico Equal Protection Clause).

The second group of plaintiffs consists of five former NMHU coaches ("Coach Plaintiffs") who raise a total of eight claims. The Coach Plaintiffs contend that as a result of their complaints regarding inequities in the NMHU athletic program, they suffered retaliation and were eventually terminated from their coaching positions. On approximately April 8, 1997, Coaches Cosmiano, Paton, Wolf and DeVries (non-plaintiff coach), met with Ms. Roybal (senior women's administrator) to discuss their concerns regarding the athletic program ("first meeting"). The coaches gave Ms. Roybal several notes at that meeting. Ms. Roybal notified Mr. Singleton (athletic director) of the meeting and showed him the coaches' notes. Mr. Singleton terminated Mr. Paton approximately one to two weeks following this meeting. In another meeting later that month or the next month ("second meeting"), Mr. Cosmiano, Mr. Paton, and Ms. Wolf discussed their concerns with Mr. Rael (university president), Mr. Singleton and Mr. Rogers (personnel director).

The Coach Plaintiffs claim that as a result of their complaints and the two meetings, Defendants retaliated against them by threatening Ms. Wolf's career, firing Mr. Paton, reducing the

---

[2] Plaintiffs assert that NMHU provides its male athletes, *inter alia*: 1) newer and better equipment and supplies, 2) better travel accommodations, 3) lower player-to-coach ratio and better compensated coaches, 4) better locker facilities, 5) better medical and training facilities and services, 6) more publicity and fund-raising assistance, and 7) more favorable recruiting budgets.

contracts of Mr. Cosmiano and Ms. Wolf, restricting recruiting and professional development of Mr. Cosmiano and Ms. Wolf, creating a hostile working environment, and terminating Mr. Cosmiano, Ms. Wolf, and assistant coaches Braswell and Loera,

Although the parties dispute certain aspects of the coaches' departure from NMHU, they agree that at one time Coach Plaintiffs Cosmiano, Paton, and Wolf held contracts with NMHU, and that at some point, Mr. Singleton terminated or chose not to renew their contracts. Mr. Cosmiano apparently hired Mr. Braswell and Mr. Loera as assistant coaches for the women's volleyball team. *See* Cosmiano Dep. at 130:19-131:10, Ex. 12 to Pls.' Opp'n. Mr. Braswell and Mr. Loera were terminated on approximately August, 15 1997. Plaintiffs claim that Defendants routinely enter into academic-year contracts with its head coaches and that Plaintiffs Wolf and Cosmiano were entitled to automatic renewal of their contracts absent good cause. Defendants' motion seeks summary judgment on all of Plaintiffs' claims, except for the Student Plaintiffs' claim of unequal treatment and benefits in violation of Title IX .

## II.    <u>Standard of Review</u>

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party must identify specific facts in the interrogatories, affidavits, depositions and other evidence that would indicate a genuine issue for trial in order to withstand a summary judgment motion. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). To establish a genuine issue of material fact, the proffered evidence must be sufficient, when viewed

in the light most favorable to the nonmoving party, for a reasonable jury to return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

III.    **Analysis/Discussion**

   ***Eleventh Amendment Immunity***

   Defendants assert that the Eleventh Amendment bars Plaintiffs' § 1983 claims against NMHU, the Board, and the individual defendants in their official capacities. The Eleventh Amendment restricts federal jurisdiction over suits brought by citizens against the State whether arising in diversity or under federal law. *See Migneault v. Peck*, 158 F.3d 1131, 1135 (10th Cir. 1998) (citing *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54 (1996)). Claims for damages under 42 U.S.C. § 1983 against a state or state agency do not abrogate a state's Eleventh Amendment immunity because a state is not a "person" subject to liability under that statute. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, claims brought against state officials in their official capacities are no different than those brought against the State itself. *See id.*

   However, a state official sued in his or her official capacity for prospective injunctive relief is a person under 42 U.S.C. § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *See id.* at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). The Tenth Circuit observed that "New Mexico considers its institutions of higher learning as state agencies and a state function." *Korgich v. Regents of N.M. Sch. of Mines*, 582 F.2d 549, 551-52 (10th Cir. 1978) (holding that the Board of Regents is an arm of the state for Eleventh Amendment immunity). Finally, the Eleventh Amendment also bars Plaintiffs from bringing any state law claims against the State in federal court. *See Mascheroni v. Board of Regents, 28 F.3d 1554*, 1559-60 (10th Cir. 1994).

Therefore, summary judgment will be granted on all of Plaintiffs' § 1983 claims against NMHU and the Board of Regents ("Board") because they are essentially claims against the state and barred by the Eleventh Amendment. However, Plaintiffs' § 1983 claims seeking only prospective injunctive relief against the individual defendants in their official capacities are still viable. *See Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994) (finding that injunctive relief against a state official acting in an official capacity may be granted to remedy a continuing violation of federal law). Plaintiffs' § 1983 claims against the individual defendants in their personal capacities also survive. Summary judgment will be granted on any state law claim to the extent that Plaintiffs assert them against NMHU, the Board of Regents, or the individual defendants in their official capacities. Any surviving state law claims will go forward against the appropriate individuals in their personal capacities.

## FEDERAL CLAIMS

## I.     Coach Plaintiffs' First Amendment Retaliation Claim

The basic elements of a First Amendment claim, as they apply to a public employee, are contained in *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996):

1)     The court must first determine whether the claimant's speech is protected under the First Amendment (citing *Powell v. Gallentine*, 992 F.2d 1088, 1090 (10th Cir. 1993)).

2)     The employee's interest in expression must outweigh the state's interest in providing efficient public services (citing P*ickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)).

3)     The plaintiff must show that the protected conduct was a "motivating factor" in the adverse employment decision (citing M*t. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

4) Assuming that the employee proves the above elements, the burden then shifts to the employer to show that it would have reached the same adverse decision absent the protected speech (citing *Powell*, 992 F.2d at 1090).

Defendants move for summary judgment asserting that Plaintiffs' First Amendment claim fails to satisfy elements one, three and four above.

### Element One:  Protected Speech

A public employee's speech involving matters of public concern is protected.  *See Hom*, 81 F.3d at 974 (citing *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)).  Defendants claim that Plaintiffs' complaints merely addressed personal employment grievances and did not rise to the level of a matter of public concern.  However, "even speech that focuses on internal employment conditions and is made in the context of a personal dispute may be regarded as pertaining to a matter of public concern if it addresses important constitutional rights which society at large has an interest in protecting."  *Clay v. Board of Trustees*, 905 F. Supp. 1488, 1497 (D. Kan. 1995) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1404 (10th Cir. 1992)).

I am persuaded that the issues raised by Plaintiffs in this case go beyond purely personal employment concerns.  Plaintiffs claim that they attempted to point out inequitable conditions in the NMHU sports program.  Deposition testimony indicates that Plaintiffs voiced concerns over discrepancies between coaches' pay, allotment of scholarship monies among male and female athletes, and the use and maintenance of athletic facilities.  Ms. Roybal received a note from one of the plaintiffs at the April 8, 1997 meeting with the subject heading:  "Title IX and other discriminations to women's sports at NMHU."  Ex. 3 of Ex. 4 to Pls.' Opp'n to Mot. for Partial Summ. J ("Pls.' Opp'n").  Discrimination against women in the context of a college sports program is a matter of public interest. *See Clay*, 905 F. Supp. at 1498 (citations omitted).  Although the Coach Plaintiffs'

allegations were related to their employment situation they also raised a matter of public concern. Accordingly, I find that the Coach Plaintiffs engaged in protected conduct under the First Amendment.

### Element Three:   Motivating Factor

Next, Defendants argue that Plaintiffs failed to establish a causal connection between the coaches' protected speech and the adverse employment actions.  Defendants assert that the second meeting could not form the basis for Mr. Paton's dismissal because that meeting did not occur until *after* the expiration of Mr. Paton's contract.  However, even if true, Mr. Paton also participated in the first meeting, which preceded both the expiration of his contract and notification of non-renewal. Thus, a factual question remains as to whether Mr. Paton's protected conduct in the first meeting was a motivating factor that led to his termination.

Defendants rely on *Conner v. Schnuck Markets, Inc*., 121 F.3d 1390 (10th Cir. 1997),[3] to support their assertion that a four month (or greater) time lag between the protected conduct and the retaliatory action "negates" causation in the retaliation claims of Mr. Cosmiano and Ms. Wolf.  That is an incorrect reading of *Conner*.  Under the facts of that case, the Tenth Circuit noted that a four month time lag between the plaintiff's "participation in protected activity and his termination *by itself* would not be sufficient to justify an inference of causation." *Id.* at 1395 (emphasis added). The *Conner* court did not express nor imply that a time lag of more than four months *destroys* the causal relationship between a plaintiff's protected conduct and subsequent adverse action.  In addition to temporal proximity, Plaintiffs present additional evidence that supports an inference that Plaintiffs'

---

[3] *Conner* is a Fair Labor Standards Act (FLSA) retaliation case.

protected conduct was a motivating factor in their termination.[4]  Therefore, summary judgment is inappropriate on the issue of causation because it remains a material factual dispute.

### *Element Four:  Employer's Burden*

Defendants claim that legitimate, non-discriminatory reasons were the bases for refusing to renew or releasing former coaches Paton, Cosmiano, and Wolf from their contracts.  I construe this assertion to be Defendants' attempt to demonstrate that the same actions would have been taken absent Plaintiffs' participation in the protected conduct.  Plaintiffs flatly deny the truth of some of Defendants reasons for their termination, and offer alternative explanations for others.[5]  Moreover, evidence exists from which a reasonable person could conclude that Defendants' proffered reasons for Plaintiffs' termination are pretextual.  *See supra* notes 4, 5.  Material issues of fact preclude summary judgment on Plaintiffs' First Amendment retaliation claim.

### *Supervisory Liability under § 1983*

Plaintiffs seek § 1983 monetary damages only from Defendants Singleton, Bingham, Roybal and Rael in their personal capacities.  Pls.' Opp'n at 8.  Although there is no concept of strict

---

[4] Ms. Roybal testified that Mr. Singleton refused to look at the notes presented by the Coach Plaintiffs at the April 8, 1997 meeting.  Ms. Wolf testified that after raising Title IX issues with Mr. Singleton, he threatened her by saying, "I have the power to murder a career."  She also claims that after the first meeting she received a lower than normal employment evaluation, that Mr. Singleton reduced her out-of-state recruiting, ignored her greetings, and once yelled at her in front of her players.  The situation regarding Mr. Cosmiano's termination is less clear.  Although Mr. Singleton apparently offered Mr. Cosmiano the interim coaching position subsequent to the April 8, 1997 meeting, Mr. Cosmiano testified that after that meeting Mr. Singleton "broke off communication with me."  Mr. Cosmiano also participated in the second meeting with President Rael.  Moreover, all of the coaches who attended both the first meeting and the second meeting were released or terminated in some manner within approximately seven months.

[5] For example, Defendants assert that Mr. Cosmiano was terminated because he called Mr. Singleton a liar, whereas Mr. Cosmiano denies that the incident occurred.  Defendants cited personality conflicts and philosophical disagreements between Mr. Singleton and Ms. Wolf as the basis for her departure.  Ms. Wolf responded that these differences of opinion centered on issues related to discrimination in women's sports at NMHU.  Defendants claim that Mr. Paton's coaching skills were inadequate and that he lacked control of his team.  Mr. Paton counters that his teams were more successful following his arrival at NMHU.

supervisor liability under § 1983, a supervisory state actor may incur liability if plaintiffs "establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996) (internal quotations omitted). Plaintiffs may satisfy this requirement by demonstrating that "the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." *Id.* at 995.

However, Plaintiffs offer little or no evidence that Mr. Bingham and Ms. Roybal are liable under this standard. Plaintiffs claim, without citing to testimony, that Mr. Bingham failed to take any corrective action after Ms. Wolf informed him of discrimination and of Mr. Paton's termination. Pls.' Opp'n at 8. There is also no evidence to suggest that Ms. Roybal made the decision to terminate Plaintiffs. Moreover, after the first meeting Ms. Roybal reported to Mr. Singleton and notified him of the coaches' comments. *See* Roybal Dep. at 122, Ex. 3 to Pls.' Opp'n. Plaintiffs have failed to demonstrate Mr. Bingham's and Ms. Roybal's direct involvement or acquiescence in any violation of Plaintiffs' constitutional rights. Therefore, no supervisory liability will lie against Mr. Bingham and Ms. Roybal in their personal capacities.

However, there is evidence that President Rael and Mr. Singleton had actual knowledge of the Coach Plaintiffs' concerns from the second meeting. Neither party disputes that Mr. Singleton either terminated or chose not to renew the Coach Plaintiffs' contracts. Ms. Concha testified that the university president approves or denies any employee terminations that the athletic director recommends. Concha Dep. at 30, Ex. 6 to Pls.' Opp'n. From this evidence a reasonable jury could infer that Defendants Rael and Singleton were directly involved in, or had actual knowledge of and acquiesced in unconstitutional conduct. Therefore, I will deny summary judgment on the § 1983

claim against Defendants Singleton and Rael in their personal capacities.  I will grant summary judgment on the claim against Defendants Bingham and Roybal in their personal capacities.

### Qualified Immunity

"The objectives, purposes, and mission of a public university are undoubtedly matters of public concern," *Gardetto v. Mason*, 100 F.3d 803, 813 (10th Cir. 1996) (citing *Kincade v. City of Blue Springs*, 64 F.3d 389, 396 (8th Cir.1995)).  Plaintiffs demonstrated that the relevant law was clearly established at the time of the alleged violations.  *See, e.g., Connick v. Myers*, 461 U.S. 138 (1983) (finding that speech on public issues is entitled to special protection); *Patrick v. Miller*, 953 F.2d 1240 (10th Cir. 1992) (finding that statements opposing discriminatory employment practices constituted speech on a matter of public concern).  Therefore, I find that Defendants are not entitled to qualified immunity on this claim.

For all of the foregoing reasons, I will grant Defendants' motion for summary judgment on the First Amendment claim against NMHU, the Board, and individual Defendants Bingham, Bickley, Keesing, Romero, Concha, and Roybal in their personal capacities.  I will also grant summary judgment for damage claims against all the individual Defendants in their official capacities.  I will deny summary judgment on this claim against the individual Defendants Rael and Singleton in their personal capacities.  I will also deny summary judgment against the individual Defendants in their official capacities for prospective injunctive relief.

## II.    Coach Plaintiffs' Title IX Retaliation Claim[6]

To establish a *prima facie* retaliation claim under Title IX Plaintiffs must show that: 1) Plaintiffs engaged in protected conduct under Title IX,  2) Defendants took adverse action against Plaintiffs, and 3) a causal link exists between Plaintiffs' protected conduct and Defendants' adverse action.  *See Topol v. Trustees*, 160 F.R.D. 474, 475 (E.D. Pa. 1995) (citing *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir.)).  All of the Coach Plaintiffs raise Title IX retaliation claims. However, Coach Plaintiffs Braswell and Loera point to no evidence that they engaged in protected conduct and therefore fail to meet element one of a *prima facie* retaliation claim under Title IX. Accordingly, I will grant summary judgment on Plaintiff Braswell's and Loera's Title IX retaliation claims against all Defendants.

As to Coach Plaintiffs Cosmiano, Paton, and Wolf, Defendants assert that Plaintiffs failed to establish a causal link between the Coach Plaintiffs' protected conduct and any adverse employment action.  However, for the reasons discussed in the First Amendment analysis *supra*, Plaintiffs sufficiently demonstrate a causal nexus between their protected conduct and subsequent adverse employment action.  Therefore, Plaintiffs Cosmiano, Paton, and Wolf establish a *prima facie* claim of retaliation under Title IX.

"[Once] a prima facie case is established, then the burden of production shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse action.  If evidence of a legitimate reason is produced, the plaintiff may still prevail if she demonstrates the articulated reason was a mere

---

[6] Federal regulations promulgated pursuant to Title IX prohibit retaliatory acts:  "No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual . . . because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part." 34 C.F.R. § 100.7(e).

pretext for discrimination." *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993) (citing *Sorensen v. City of Aurora*, 984 F.2d 349, 353 (10th Cir. 1993)). Assuming that Defendants satisfy their burden of demonstrating a legitimate reason for Plaintiffs' termination, Plaintiffs provide sufficient evidence to raise a genuine dispute over whether Defendants' asserted reasons for termination are pretextual. *See supra* First Amendment analysis and notes 4, 5. Because Plaintiffs raise a material issue over whether the defendants' reasons for dismissal are pretextual, summary judgment is inappropriate on this claim.

Defendants Bingham, Bickley, Keesing, Romero, Concha, Rael, Singleton, and Roybal assert that no individual liability is permitted under Title IX. "Title IX actions may only be brought against an educational institution, not an individual acting as an administrator or employee for the institution." *Clay*, 905 F. Supp. at 1495-96 (citations omitted). Citing several supporting cases, the *Clay* court concluded that 34 C.F.R. § 100.7(e) does not authorize a Title IX claim against an individual. *See id.* at 1496. Accordingly, I find that no individual liability attaches under this statute.

I will grant summary judgment as to Plaintiff Braswell's and Loera's Title IX retaliation claims against all Defendants. I will also grant summary judgment on Plaintiffs' Title IX claims against all individual Defendants in their personal capacities. I will deny summary judgment on the Title IX retaliation claims of Plaintiffs Cosmiano, Paton, and Wolf against NMHU, the Board, and the individual Defendants in their official capacities.

### III.    Student Plaintiffs' Title IX Claim of Unequal Scholarship Funding

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program . . . receiving Federal financial assistance." 20 U.S.C. § 1681(a). "To the extent that a

recipient awards athletic scholarships . . . it must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics." 34 C.F.R. § 106.37 (c)(1).

Defendants contend that NMHU spends more scholarship money per female athlete than per male athlete. To support their argument, Defendants point to a document entitled "Scholarship Analysis Based on 1996-97 and 1997-98 Athletic Budget," *see* Ex. 7 to Defs.' Mot., apparently prepared from the 1996 to 1997 budget. Carpenter Dep. to Defs.' Mot. Plaintiffs, however, assert that NMHU fails to provide substantially proportional athletic scholarship funds to its female athletes. They cite an Equity in Athletic Disclosure Act report, *see* Ex. 2 to Pls.' Opp'n, for June 1996 to June 1997 to support their claim that NMHU allocated a larger percentage of out-of-state athletic scholarships to its men's teams than to its women's teams. Plaintiffs argue that this allocation resulted in fewer available scholarship monies for female student athletes. Summary judgment is precluded on this claim because a genuine issue of material fact exists over whether NMHU provided reasonable opportunities for athletic scholarships to members of each sex as required by 34 C.F.R. § 106.37(c)(1).

As previously noted, I find that no individual liability attaches under Title IX, therefore I will grant summary judgment on this claim as to the individual defendants in their personal capacities. I will deny summary judgment on the Title IX unequal scholarship funding claim as to NMHU, the Board and the individual defendants in their official capacities.

**IV.**   **Student Plaintiffs' § 1983 Claim of Violation of**
       **Fourteenth Amendment Equal Protection Rights**

Defendants challenge Plaintiffs' § 1983 equal protection claim to the extent that it fails "pursuant to the Title IX claims as to the individual defendants." Defs.' Mot. at 19. I construe this ambiguous statement to be an assertion that the individual defendants lack supervisory liability. Defendants do not otherwise challenge the substance of the equal protection claim. Defendants' assertion fails as to President Rael and Mr. Singleton for substantially the same reasons as noted in the First Amendment analysis *supra*. President Rael and Mr. Singleton are subject to personal liability because a reasonable jury could conclude that they personally directed or acquiesced in unconstitutional conduct. Furthermore, because clearly established law prohibited discrimination on the basis of sex at the time of the alleged conduct, *see Shank v. Naes*, 773 F.2d 1121, 1126-27 (10th Cir. 1985), I find that Defendants Rael and Singleton are not entitled to qualified immunity on this claim.

I will grant summary judgment on Plaintiffs' § 1983 equal protection claim against NMHU, the board and as to any damage claims against the individual Defendants in their official capacities. I will deny summary judgment on Plaintiffs' claims against Defendants Rael and Singleton in their personal capacities, and on Plaintiffs' claim for prospective injunctive relief against the individual Defendants in their official capacities.

## STATE CLAIMS

**I.**   **Student Plaintiffs' Claim under the New Mexico Constitution**

Plaintiffs' claim that Defendants violated the Student Plaintiffs' rights under Article II, § 18, the equal protection clause of the New Mexico Constitution. Defendants contend that no authority

"implies a private cause of action [under this constitutional provision] and plaintiffs have failed to plead any mechanism by which they seek to enforce this alleged protection." Defs.' Mot. at 19-20. In their response brief, Plaintiffs merely restated their claim that Defendants violated the students' rights under the New Mexico Constitution, but otherwise fail to address Defendants' contention. I construe the absence of response on Plaintiffs' part as their consent to grant summary judgment on this claim. *See also* D.N.M.LR-Civ. 7.5 (b).

## II.   Plaintiff Cosmiano's Defamation Claim

Plaintiff Cosmiano raises a supplemental state defamation claim against Mr. Singleton. I find that the defamation claim is not sufficiently related to a federal claim in this suit in order to satisfy the requirements of 28 U.S.C. § 1367(a).[7] The conduct on which Mr. Cosmiano bases his defamation action did not occur until after his termination from NMHU.[8] Consequently, that conduct does not underlie the Title IX or First Amendment retaliation claims,[9] the federal actions with which the defamation claim is most closely aligned. Moreover, the exercise of pendent jurisdiction is discretionary with this Court. *See Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). Given the absence of a closely associated federal claim and in the interests of comity, Plaintiffs' state defamation claim shall be dismissed without prejudice.

---

[7] The claims must be "so related . . . that they form part of the same case or controversy." *Id.*

[8] Plaintiff Cosmiano bases his defamation claim on two newspaper articles published after his termination from NMHU.

[9] According to Plaintiffs, conduct related to the Title IX and First Amendment retaliation claims occurred prior to, or resulted in, their termination.

### III.   **Plaintiffs Braswell and Loera:  Promissory Estoppel Claim**

Plaintiffs Braswell and Loera are no longer valid parties to any of the federal claims in this lawsuit.  *See supra* Federal Claims II (granting summary judgment on Mr. Braswell's and Mr. Loera's Title IX retaliation claims).   Because no associated federal claim supports the state promissory estoppel action, the jurisdictional basis for this claim no longer exists under 28 U.S.C. § 1367(a).  *See supra* State Claims II (dismissing defamation claim for lack of jurisdiction). I will therefore dismiss Plaintiffs' promissory estoppel claim without prejudice.

### IV.   **Coach Plaintiffs' Wrongful Discharge Claim**

Defendants argue that the New Mexico Tort Claims Act ("NMTCA") bars Plaintiffs' wrongful discharge claim.  The NMTCA provides immunity from tort to a "governmental entity and any public employee while acting within the scope of duty."  NMSA 1978, § 41-4-4(A) (1999).  The Eleventh Amendment bars all of Plaintiffs' state law claims against NMHU, the Board, and the individual defendants in their official capacities.  Therefore, the only possible defendants to this claim are the individual defendants in their personal capacities.  In *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 872 P.2d 852 (1994), the New Mexico Supreme Court found that a retaliatory discharge claim could properly be raised against the employer-corporation, but not against its officers and employees.  The court found it "difficult to see how a retaliatory discharge cause of action would apply to the *individual* defendants acting in the course and scope of their employment." *Id.* at 437, 872 P.2d at 855 (emphasis added).

Like the corporation in *Bourgeous*, NMHU can hire and fire only through its officers and employees.  The parties in this case do not dispute that Mr. Singleton terminated or chose not to

renew the Coach Plaintiffs' contracts.[10]  Nor do they dispute that Mr. Singleton had the authority to

undertake these actions.  Because Mr. Singleton was authorized by NMHU to discharge Plaintiffs,

his conduct fell within the scope of his duties.  Accordingly, I find that Plaintiffs' wrongful discharge

claims against the individual defendants are precluded under the principles expressed in *Bourgeous*.

I will therefore grant Defendants' motion for summary judgment on this claim.

**V.      Plaintiffs Cosmiano, Wolf, Braswell, and Loera:**
**Breach of Contract  Claim**

New Mexico's contractual liability statute grants governmental entities "immunity from

actions based on contract, except actions based on a valid written contract."   NMSA 1978,

§ 37-1-23(A) (1978).  As noted, the Eleventh Amendment bars Plaintiffs' state claims against all but

the individual defendants in their personal capacities.  Further, because Plaintiffs Braswell and Loera

are no longer parties to any federal claim in this action, this Court lacks jurisdiction to entertain their

state breach of contract claims.  *See supra* State Claims II.

The circumstances that troubled the *Bourgeous* court, contemplating a wrongful discharge

action against an individual defendant, apply in this breach of contract claim as well.  Mr. Singleton

hired and fired personnel as the NMHU athletic director.  Because Mr. Singleton acted in his official

capacity as athletic director in terminating, or refusing to renew the Coach Plaintiffs' contracts, there

can be no viable breach of contract claim against him in his personal capacity.  *See Kincaid v. Gibson*,

No. 98-5385, 1999 WL 691835, at *5 (6th Cir. Sep. 8, 1999) (affirming the district court's finding

that the conduct of the defendants in their official capacity did not render them individually liable for

breach of contract); *Dover v. Arkansas State Univ.,* 64 F.3d 442, 447 (8th Cir. 1995) (finding that

---

[10] Plaintiffs present no evidence that President Rael or the Board initiated the decisions to terminate the coaches.

the plaintiff did not have a viable breach of contract claim against the university trustees in their individual capacities because the trustees were parties to the contract only in their official capacities).

Consequently, I will grant Defendants' motion for summary judgment on the breach of contract claim against all Defendants. To determine whether Defendants breached the covenant of good faith and fair dealing will require an examination of the parties' contracts. *See Bourgeous*, 117 N.M. at 439, 872 P.2d at 857. Because a viable breach of contract claim is no longer before this Court, I will dismiss Plaintiffs' claim for breach of the covenant of good faith and fair dealing without prejudice.

## VI. Coach Plaintiffs' Claim of Intentional Infliction of Emotional Distress (IIED)

Defendants challenge Plaintiffs' IIED claim and assert that none of the defendants engaged in extreme and outrageous conduct. In New Mexico "the court determines as a matter of law whether conduct reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress." *Padwa v. Hadley*, 1999-NMCA-067 ¶ 9, 981 P.2d 1234, 1237 (citing *Trujillo v. Paro*, 101 N.M. 408, 414, 683 P.2d 963, 969 (Ct. App. 1984)). New Mexico courts adopted the Restatement approach which requires that in order for an actor's conduct to be considered extreme and outrageous it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (*quoted in Padwa*, ¶ 10, 981 P.2d at 1237). "[T]he Restatement sets the threshold at the very highest level for conduct to be considered actionable under the tort of outrage." *Padwa* ¶ 11, 981 P.2d at 1238.

I do not find that Defendants' actions with respect to Mr. Cosmiano and Mr. Paton were sufficiently egregious under this standard to constitute extreme and outrageous conduct. However, Ms. Wolf presents evidence that could support a conclusion that Mr. Singleton engaged in conduct that was extreme and outrageous. Ms. Wolf alleges, *inter alia*, that after discussing her concerns with him, Mr. Singleton held up her contract and declared: "I was given the power . . . to murder a career." Wolf Dep. at 117:23-118:2, Ex. 10 to Pls.' Opp'n. Along with family and health issues, employment matters are high on many people's priority list. In light of his position of authority within the athletic department, a jury could perceive Mr. Singleton's statement to be a credible threat and determine that such behavior on the part of a supervisor is extreme and outrageous conduct.

Ms. Wolf also provides evidence that she suffered severe emotional distress. Severe emotional distress is that with which a reasonable person would be unable to adequately cope. *Silverman v. Progressive Broad., Inc.*, 1998-NMCA-107, ¶ 33, 964 P.2d 61, 71 (citations omitted). In her deposition, Ms. Wolf described a "depression-like" state of "not wanting to leave the house and not wanting to go to work." Wolf Dep. at 235, Ex. 10 to Pls.' Opp'n. In July of 1997, she saw a doctor for problems with heartburn, acid indigestion and an inability to sleep. *See id*. The doctor prescribed something "to take anxiety away, because I was just a nervous wreck." *Id.* A jury could reasonably conclude from this evidence that Ms. Wolf suffered severe emotional distress. Defendants further contend that Ms. Wolf is barred from bringing this claim by both the New Mexico Tort Claims Act and the exclusivity provision of the New Mexico Workers Compensation Act.

### New Mexico Tort Claims Act (NMTCA)

The New Mexico Tort Claims Act provides immunity to "[a] governmental entity and any public employee while acting within the scope of duty . . . for any tort except as waived." NMSA

1978, § 41-4-4(A) (1999).  Scope of duty is any duty "that a public employee is requested, required or authorized to perform by the governmental entity."  NMSA 1978, § 41-4-3(G) (1995).  I find there exists an issue of material fact regarding whether Mr. Singleton's conduct falls within the scope of his duties as an athletic director.  Although Mr. Singleton likely has disciplinary authority within the athletic department, it is highly doubtful that he was requested, required or authorized to threaten the career of a subordinate.  A jury could find that Mr. Singleton intentionally threatened Ms. Wolf's career outside the scope of any authorized duty.  Therefore, summary judgment based on the NMTCA is inappropriate.

### New Mexico Workers Compensation Act (NMWCA)

"[T]he basic essence of the exclusivity provision is that the AC's remedy is exclusive to all other remedies against the employer for the same injury."  *Coates v. Wal-Mart, Inc.*, 1999-NMSC-013, ¶ 24, 976 P.2d 999, 1004.  A claim falls outside of the NMWCA if "substantial evidence exists that the employer intended to injure the employee."  *Id.* (citing *Johnson Controls World Servs. v. Barnes,* 115 N.M. 116, 118, 847 P.2d 761, 763 (Ct. App. 1993)).  A rational fact-finder could find that Mr. Singleton intended that his actions cause emotional injury to Ms. Wolf, therefore the NMWCA is not a bar to her claim of IIED.

As previously noted, Eleventh Amendment immunity bars Ms. Wolf from raising her state claims against NMHU, the Board, or the individual defendants in their official capacities.  Further, there is no evidence in the record to support a claim of IIED against any of the remaining individual Defendants.  I will therefore grant Defendants' motion for summary judgment on Plaintiff Cosmiano's and Paton's IIED claim against all Defendants, and on Plaintiff Wolf's claim against all Defendants except Mr. Singleton in his personal capacity.  Any IIED claim that is based on Defendants' actions

occurring after a plaintiff was terminated will be dismissed without prejudice for the reasons discussed in the defamation analysis *supra*. I will deny summary judgment on Ms. Wolf's IIED claim against Mr. Singleton in his personal capacity.

## CONCLUSION

All of Plaintiffs § 1983 claims against NMHU or the Board are precluded by the Eleventh Amendment, as are Plaintiffs' § 1983 claims for damages against any individual Defendant in his or her official capacity. All of Plaintiffs' state claims against NMHU, the Board, or the individuals in their official capacities are also precluded by the Eleventh Amendment. All of Plaintiffs' Title IX claims are precluded against the individual defendants in their personal capacities.

Claims remaining before this Court are: 1) Plaintiff Cosmiano's, Paton's, and Wolf's § 1983 First Amendment retaliation claims against Defendants Rael and Singleton in their personal capacities, and against the individual defendants in their official capacities for prospective injunctive relief; 2) Plaintiff Cosmiano's, Paton's, and Wolf's Title IX retaliation claim against NMHU, the Board, and the individual defendants in their official capacities; 3) Student Plaintiffs' Title IX claim of unequal athletic scholarship funding against NMHU and the Board; 4) Student Plaintiffs' Title IX unequal treatment and benefits claim against NMHU and the Board; 5) Student Plaintiffs' § 1983 equal protection claim under the Fourteenth Amendment to the United States Constitution against Defendants Rael and Singleton in their personal capacities, and against the individual Defendants in their official capacities for prospective injunctive relief; and 6) Plaintiff Wolf's IIED claim against Defendant Singleton in his personal capacity.

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Partial Summary Judgment *(Doc. 48)* is **granted in part**.

**IT IS FURTHER ORDERED** that summary judgment is **granted** on Plaintiff Cosmiano's, Paton's, and Wolf's § 1983 First Amendment retaliation claim against NMHU, the Board, and as to the damage claims against all the individual Defendants in their official capacities. Summary judgment is **denied** on Plaintiffs' § 1983 claim as against Defendants Rael and Singleton in their personal capacities; summary judgment is also **denied** on the claim for prospective injunctive relief as to the individual defendants in their official capacities.

**IT IS FURTHER ORDERED** that summary judgment is **granted** on Plaintiff Braswell's and Loera's Title IX retaliation claims against all Defendants; summary judgment is also **granted** on all of Plaintiffs' Title IX retaliation claims against the individual defendants in their personal capacities. Summary judgment is **denied** on Plaintiff Cosmiano's, Paton's, and Wolf's Title IX retaliation claims as to NMHU, the Board, and the individual defendants in their official capacities.

**IT IS FURTHER ORDERED** that summary judgment is **granted** on Student Plaintiffs' Title IX unequal athletic scholarship funding claim against the individual defendants in their personal capacities. Summary judgment is **denied** on the Student Plaintiffs' claim against NMHU and the Board.

**IT IS FURTHER ORDERED** that summary judgment is **granted** on Student Plaintiffs' § 1983 claim under the equal protection clause of the Fourteenth Amendment of the United States Constitution against NMHU, the Board, and as to the damage claims against all the individual Defendants in their official capacities. Summary judgment is **denied** on Student Plaintiffs' § 1983 claim against Defendants Rael and Singleton in their personal capacities; summary judgment is also **denied** on the claim for prospective injunctive relief as to the individual Defendants in their official capacities.

**IT IS FURTHER ORDERED** that summary judgment is **granted** on Student Plaintiffs' claim under Article II, § 18 of the New Mexico Constitution.

**IT IS FURTHER ORDERED** that Plaintiff Cosmiano's defamation claim against Mr. Singleton is **dismissed** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff Braswell's and Loera's promissory estoppel claim is **dismissed** without prejudice.

**IT IS FURTHER ORDERED** that summary judgment is **granted** on Plaintiffs' wrongful discharge claim.

**IT IS FURTHER ORDERED** that summary judgment is **granted** on Plaintiff Cosmiano's, Wolf's, Braswell's, and Loera's breach of contract claim.

**IT IS FURTHER ORDERED** that Plaintiff's claim for breach of the covenant of good faith and fair dealing is **dismissed** without prejudice.

**IT IS FINALLY ORDERED** that summary judgment is **granted** on Plaintiff Cosmiano's and Paton's IIED claims against all the defendants and on Plaintiff Wolf's IIED claim against all Defendants except Mr. Singleton in his personal capacity. Any IIED claim that is based on a Defendant's conduct occurring after a Plaintiff was terminated is **dismissed** without prejudice. Summary judgment is **denied** on Plaintiff Wolf's IIED claim against Mr. Singleton in his personal capacity.

DATED this 27th day of October, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

-23-

Counsel for Plaintiffs:

>Kristen M. Galles
>Equity Legal
>Alexandria, Virginia

>Linda M. Vanzi
>Vanzi & Gagne, PC
>Albuquerque, New Mexico

>Nancy Kantrowitz
>The Schulze Law Firm
>Santa Fe, New Mexico

Counsel for Defendants:

>Timothy L. White
>Atwood, Malone, Turner & Sabin
>Albuquerque, New Mexico

>Nancy Ruth Long
>Herrera, Long & Pound, P.A.
>Santa Fe, New Mexico